E-FILED
Friday, 18 December, 2009  03:33:07 PM
Clerk, U.S. District Court, ILCD

C

Dockets.Justia.com

ORDER - BLANK                                                     2116 (Rev. 07/07)

**STATE OF ILLINOIS**          **UNITED STATES OF AMERICA**        **COUNTY OF DU PAGE**
                    IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT

ANDY MARTIN                              **CASE NUMBER**

                    PLAINTIFF            2008 L 407

        VS.

NEW YORK TIMES
COMPANY, et al

                    DEFENDANT                                     File Stamp Here

                              **ORDER**

This matter coming on to be heard, the Court being fully advised in the premises and having jurisdiction of the subject matter, ~~IT IS HEREBY ORDERED:~~ and the Court having read Defendant New York Times Company's Motion To Dismiss The Action for Plaintiff's Violation of Injunction Order Requiring Him To Disclose His Pro Se Litigation History and For Extension of Time To Answer or Otherwise Plead (the "Motion") the Court having reviewed the Motion and the cases cited in the Motion, and Plaintiff have failed to appear in Court by 9:30 a.m or otherwise to object to the Motion:

IT IS HEREBY ORDERED that the Motion is granted, and this action is dismissed with prejudice as to all defendants for the reasons stated in the Motion.

Name: TIMOTHY M. McLEAN    ☐ PRO SE    ENTER:
DuPage Attorney Number: 16440
Attorney for: DEFENDANT THE NEW YORK TIMES
Address: 2100 MANCHESTER RD, SUITE 1755
City/State/Zip: WHEATON, IL 60187                    Judge
Telephone: 630/871-2612        Date: 5/29/08

1

STATE OF ILLINOIS      )
                       )  SS.
COUNTY OF Du PAGE      )

          IN THE 18TH JUDICIAL CIRCUIT COURT
                DuPAGE COUNTY, ILLINOIS

ANDY MARTIN,                )
                            )
          Plaintiff,        )
                            )
          vs.               )     No. 08 L 407
                            )
RODNEY BLAGOJEVICH,         )
ALEXI GIANNOULIAS,          )
REGIONAL TRANSPORTATION,    )
                            )
          Defendants.       )

          REPORT OF PROCEEDINGS had at the hearing

of the above-entitled cause, before the HONORABLE

JOHN T. ELSNER, Courtroom No. 2010, DuPage County

Judicial Center, recorded on the DuPage County

computer based digital recording system, DuPage

County, Illinois, transcribed by Jeanneen Terry,

certified shorthand official court reporter, on May

29, 2008.

PRESENT:
          MR. TIM McLAIN, and
          MR. DAVID SANDERS,
             appeared on behalf of
             New York Times.


          JEANNEEN TERRY - CSR NO. 84-1085
          18th Judicial Circuit - DuPage County
          505 North County Farm Road - Room 366
                Wheaton, Illinois  60187

OFFICIAL COURT REPORTER, 630/407-8874

2

20    1      THE COURT:  Martin case, No. 14.

      2      MR. McCLAIN:  Good morning, your Honor.

      3      THE COURT:  Good morning.

      4      MR. McCLAIN:  Tim McClain, on behalf of

      5   defendant, the New York Times Company, here with

      6   co-counsel, David Sanders, from Jenner and Block.

      7      MR. SANDERS:  Good morning, your Honor.

      8      THE COURT:  Good morning.

      9      MR. McCLAIN:  It's up before you on our motion

     10   to dismiss.  I'll provide you with a courtesy

     11   copy.

     12      THE COURT:  The motion to dismiss was filed,

     13   and you were good enough to give me a courtesy

     14   copy well in advance of today, that I've read the

     15   motion, that I've read the cases cited in the

     16   motion.

     17          I'm a little surprised that this

     18   particular plaintiff had sued the highest court in

     19   New York and he didn't disclose the injunction,

     20   but it is now after 9:20, there's no opposition to

     21   the motion, and pursuant to the cases cited in the

     22   motion, it's granted.

     23      MR. McCLAIN:  Very well, your Honor.

     24      MR. SANDERS:  Thank you, your Honor.

3

20   1          May we have 304(A) language, your Honor,

     2   because we are -- it resolves it as to the New

     3   York Times Company, but we'd like an order that

     4   says there's no just cause for delaying

     5   enforcement or appeal of this order.

     6       MR. McCLAIN:  I think --

     7       THE COURT:  You know, that's fine.  This

     8   motion goes to all defendants.

     9       MR. SANDERS:  Okay.

    10       MR. McCLAIN:  Okay.

    11       THE COURT:  And you can put that language in.

    12       MR. McCLAIN:  Well, then it is a final order.

    13       THE COURT:  I understand, even though it's a

    14   final order, if there's a motion to reconsider

    15   filed within the time I have jurisdiction, --

    16       MR. McCLAIN:  Right.

    17       THE COURT:  -- that can be heard, but I think

    18   it should be final and appealable, you're right.

    19   Thanks.

    20       MR. McCLAIN:  Very well.

    21       MR. SANDERS:  Thank you very much, your Honor.

    22              (Which were all the proceedings had at

    23              the above-entitled cause this date.)

    24

4

1    STATE OF ILLINOIS  )
                        )   SS.
2    COUNTY OF DU PAGE  )

3

4              IN THE 18TH JUDICIAL CIRCUIT COURT
                    DU PAGE COUNTY, ILLINOIS

5

6

7              I, JEANNEEN TERRY, hereby certify that I

8    reported in shorthand the foregoing Report of

9    Proceedings in the above-entitled cause,

10   consisting of Pages 1 through 3 inclusive, and

11   that said Report of Proceedings is a true, correct

12   and complete transcript of my shorthand notes so

13   taken at the time and place hereinabove set forth.

14

15

16

17

18

19

20   _____

21
              Jeanneen Terry, CSR No. 84-1085
22            Official Court Reporter for the
                18th Judicial Circuit Court
23                DuPage County, Illinois

24

OFFICIAL COURT REPORTER, 630/407-8874

1   STATE OF ILLINOIS )

2                   ) SS.

3   COUNTY OF DU PAGE )

4

5        IN THE CIRCUIT COURT OF DU PAGE COUNTY
       FOR THE 18TH JUDICIAL CIRCUIT OF ILLINOIS

6   ANDY MARTIN,               )
                               )
7              Plaintiff,      )
                               )
8                              )
                               )
9              vs.             )   No. 08 L 407
                               )
10  NEW YORK TIMES COMPANY,    )
    DALLAS MORNING NEWS,       )
    FARHAD MANJOO,             )
11  JOHN WILEY & SONS,         )
                               )
12             Defendants.     )

13

14                 REPORT OF PROCEEDINGS had and

15  testimony taken at the hearing of the

16  above-entitled cause, before the Honorable

17  Hollis L. Webster, Judge of said Court, recorded

18  on the DuPage County computer based digital recording

19  system, DuPage County, Illinois, transcribed by

20  Rosemary Stephens, Certified Shorthand Official Court

21  Reporter, commencing on Wednesday, the 1st of October,

22  A.D., 2008.

23  Rosemary Stephens, CSR# 84-2515

24  Official Court Reporter

```
 1   PRESENT:

 2

 3        MR. ANDY MARTIN

 4             appeared pro se;

 5

 6        MR. TIMOTHY M. MCLEAN,

 7        MR. DAVID SANDERS,

 8             appeared on behalf of the

 9             New York Times Company.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

1          THE CLERK:  Martin versus Blagojevich.

2          THE COURT:  Good morning.

3          MR. MCLEAN:  Good morning, your Honor, Tim

4    McLean, M-C-L-E-A-N, counsel on behalf of New York

5    Times Company.

6          MR. SANDERS:  Good morning, your Honor, David

7    Sanders for the New York Times Company.

8          THE COURT:  Okay, good morning.

9          MR. MARTIN:  Andy Martin, your Honor.  Good

10   morning.  I am the plaintiff in this action.

11         THE COURT:  Okay.

12         MR. SANDERS:  Your Honor, before we begin,

13   there's a clerical matter that Mr. Martin and I have

14   discussed that we'd like to enlist the Court's

15   assistance, if we may.

16         THE COURT:  Sure.

17         MR. SANDERS:  And that is when Mr. Martin

18   filed the original complaint in this action, he

19   mistakenly used an improper caption for this case

20   number, which is 08 L 407.  That's why the case was

21   called as the Blagojevich name.  That was a clerical

22   error.

23         MR. MARTIN:  Your Honor, it's a template error

24   or may I say a word processing error, and I apologize

3

1  to the Court.  It is absolutely my fault.  It had
2  nothing to do with the clerk.

3        MR. SANDERS:  All we are asking is when we are
4  done with the other business before the Court, if we
5  may ask the Court to include in our order an order to
6  the Clerk of the Court, and we will give the correct
7  names to change the caption because we have had some
8  problems when we have appeared with this case number.
9  It doesn't match what the case is, which is Martin
10  versus the New York Times Company.

11        THE COURT:  Okay, that's fine.  That is
12  probably more properly addressed to the judge who will
13  be assigned to handle this case pending the outcome of
14  the hearing on this motion.  But it's not going to be
15  a problem no matter who.  We can straighten that out.

16        MR. MARTIN:  It's not like we are fighting.
17  He knows that he has been sued and it's absolutely my
18  fault, your Honor, vis-a-vis the --

19        THE COURT:  Well, that can be addressed.  No
20  problem.  My understanding is my role in this case is
21  as Presiding Judge of the Civil Division to hear a
22  motion for substitution of judge for cause from Judge
23  Elsner, which has been briefed.  I have received both
24  the motion from plaintiff and a response.  I did not

4

1  receive a reply.  I don't know whether one has been
2  filed.  If so, I have not reviewed it.
3       MR. MARTIN:  Your Honor, I just received the
4  defendant's response yesterday.  And I have received a
5  call from your assistant asking me if I was going to
6  file a response, very efficient, and I said that I
7  would.  I have been traveling and as often happens
8  when you have stuff, you say I am sure it's in my file
9  and I will go to court.  I did get a copy from
10  attorney Sanders yesterday.
11            What's kind of interesting is that when
12  it was transmitted to the Court on June 26, attorney
13  McLean transmitted it to the Court with a cover letter
14  and he says he sent it to me by fax.  Now, I have a
15  small office and almost routinely, I don't know if
16  it's in the boilerplate of this case, but almost
17  routinely on every case that I am involved in I put at
18  the bottom, take faxes up to 10 pages, because
19  sometimes law firms will file 100 pages and it just
20  knocks me out of business.
21            It wasn't faxed to me.  I can assure
22  your Honor that had I received this as a fax, first my
23  fax machine couldn't accept it, just physically
24  doesn't have that much paper in it.  It doesn't work

5

1  that well that it could get something like this.
2  Secondly, I didn't get it because I would have been
3  complaining.  If I had gotten this, I would have
4  called Mr. McLean and said, Mr. McLean, I am going to
5  accept faxes up to a reasonable page number.  I can't
6  accept whatever this is.  It's 50 or 100 pages.  I
7  haven't counted.  I never got it.  It doesn't even
8  purport that it was sent by mail.  It just says that
9  it was sent only by fax.  I didn't get it.  I did get
10  it yesterday.  I am willing to go forward because I
11  don't think there's anything in here that has anything
12  to do with the issue here.  And I will address the
13  issue of what's in here because I think it's a
14  continuation of the problem we are having with the
15  defendant's attorneys.
16        THE COURT:  Okay, so you are going to proceed
17  and make any oral arguments in support of your motion
18  for SOJ for cause?
19        MR. MARTIN:  Absolutely.
20        MR. SANDERS:  Your Honor, just as a technical
21  matter, I have two things.  I have the fax
22  confirmation page from June 26 to Mr. Martin showing
23  that we sent him the notice, showing that we sent him
24  the opposition.  We also have the certificate of

6

1  service to show as a courtesy, we sent it by mail.  We

2  served it to him two ways on June 26.

3          .           Second of all, to clarify the record and

4  make sure there is no misunderstanding as to the'

5  notice, this was scheduled before your Honor on August

6  20.  Mr. Martin called me on August 18 to say he was

7  busy and couldn't make it on the 20th, a date that he

8  himself participated in selecting.  We were set for

9  hearing then.  Mr. Martin didn't say anything about I

10  don't have notice.  He just simply had failed to file

11  a reply brief.  We agreed, we continued it, extended

12  him the courtesy to continue it ·to a date that he

13  selected which is today.  It's up for hearing.  I have

14  the letter to Mr. Martin on August 20 saying that.

15  Mr. Martin never said until yesterday that he didn't

16  have the papers.  He has had them since June 26, two

17  different ways of service.

18          .    MR. MCLEAN:  Your Honor, I would simply add,

19  your Honor, it was a 14-page fax.  I told him exhibits

20  would follow by mail and I have the confirmation that

21  he received it.

22          MR. MARTIN:  Never got them, your Honor.

23  Never got them.  They weren't faxed to me.  I didn't

24  get them by mail.  This is a prodigious document.  If

7

1  you got something like that, you would remember it.

2  Furthermore, he may have sent this notice of filing,

3  but the reason I had notice of the 20th of August was

4  not because of his document here but because I was in

5  court when we agreed on that date in your Honor's

6  chambers as I remember.  We set that hearing and I had

7  a problem with the schedule.  Yes, I had notice of the

8  20th of August but for no reason having to do with

9  what he faxed me, number one.

10          Number two, as I say, they may have

11  faxed me the notice -- may I examine the notice that

12  he just handed up and see how many pages he purports

13  to have faxed.

14          MR. MCLEAN:  It's 14.

15          MR. MARTIN:  This is clearly not 14 pages,

16  your Honor.

17          THE COURT:  Okay, why don't we stop the

18  argument about whether you got it or not since you

19  have agreed to proceed with the hearing.  And to make

20  the record further more amplified, I did ask the

21  secretary that works with me to follow up to see if

22  there was a reply that I could review before the

23  hearing, and she reported to me and I will report to

24  all counsel that she was able to reach you, Mr.

8

1  Martin, on several occasions and she did get mixed
2  messages.  One was that the reply was almost complete,
3  and it would be faxed to us.  Another was that there
4  would not be a reply, if I remember correctly.

5          So I left my office yesterday
6  understanding that I had reviewed everything that was
7  available for me to review.  So let's proceed to the
8  substantive matter, the motion for substitution.

9          MR. MARTIN:  One matter of confusion, your
10  Honor, you indicated that it was only for cause but
11  it's my belief that under the statute, before we get
12  to a cause substitution of judge, you can always have
13  a substitution of right before a judge.

14          THE COURT:  That's not something that I deal
15  with, though.

16          MR. MARTIN:  It's right in the motion.  You
17  said it was only for cause but it says --

18          THE COURT:  It may be in your motion, sir, but
19  it's not something that I as the Presiding Judge of
20  the Civil Division deal with.  That's something that
21  Judge Elsner, the assigned judge, would deal with.
22  It's my understanding in reviewing the papers that
23  have been filed, that it's already been dealt with,
24  that he has denied the motion for substitution as a

9

1   matter of right because he has made a substantive
2   ruling in the case prior to the filing of that
3   motion.  I simply noted that in the record.

4              So my limited· involvement here will be
5   to rule upon, to hear the arguments, I read the
6   briefs, and to rule upon the motion for SOJ for
7   cause.

8              MR. MARTIN:  Your Honor, the defendants and
9   there apparently is now a practice of filing things
10  through the Court that I don't receive.  I can see
11  it's getting to be quite irritating, conducted a
12  hearing where they knew I was across the hall.  I had
13  not received notice of this hearing.  As your Honor is
14  aware, if I have a hearing, I will call opposing
15  counsel if I can't make it or I show up.  I am not in
16  the habit of being across the hall and not crossing
17  the hall.  I mean, this morning I had a very minor
18  matter that I had to reschedule, and I was bouncing
19  back and forth between your Honor's courtroom and this
20  courtroom and the other one and got it taken care of.
21  I have a history, a long history, Mr. -- will attest
22  of showing up in court of when I receive notice.  I
23  don't have a practice of ignoring notices, and if I
24  can't make it, I notify counsel and I have appeared

10

1   many times in cases with counsel and we have done so.
2   I never received notice of this hearing.

3              They went into the judge and filed all
4   their confusing slime and conducted an ex parte
5   hearing.  I had no opportunity to be heard.  No
6   opportunity to do anything and I am in court across
7   the hall, a lawsuit over -- an election related
8   lawsuit.  The other lawyer in that case knew about it,
9   ·I didn't.  He is in court with these guys and then he
10  runs across the hall and he says look, I have an order
11  that was just signed, the ink is still wet.  Blah,
12  blah, blah, blah, blah.

13             Judge Wheaton ignored that.  It was
14  outrageous.  Now, immediately upon hearing that, I
15  went and filed a motion to set it aside.  It should
16  have been a simple matter.  Mr. Martin, I'm sorry you
17  didn't get notice.  Counsel says they sent it.  I am
18  sure you will get it.  I did get it in due course.  It
19  reached me.  I am not denying that I eventually got
20  it.  It was sent.  But we have problems in Chicago.
21  We have problems getting mail downtown.  We should
22  have just gone back and held the hearing on the merits
23  and I would have needed a little bit of time to
24  respond and I would have filed my memo and that would

11

1  have been the end of it.

2          Now, Judge Elsner just didn't want to

3  give me an opportunity to defend myself against these

4  personal attacks and these unfounded, completely

5  malicious and misleading arguments. That's wrong.

6  Now, initially I did file, as you say, for

7  substitution as of right. I put them both in one

8  motion. He didn't think that was a basis for

9  substitution, that he conducted an ex parte hearing.

10  I do  because the problem the litigant gets involved

11  in, all of a sudden the Court's impartiality is in

12  question if you are conducting an ex parte hearing,

13  particularly when they are sliming their opposing side

14  and getting up and lying and misrepresenting things as

15  Jenner & Block usually does. It's very hard for

16  everybody, particularly for the Court because it

17  compromises the independence and integrity of the

18  Court. I don't know what Judge Elsner's problem is.

19  I really don't. But I am not comfortable being in

20  front of a judge that conducts ex parte hearings, and

21  I am not comfortable if he will hear local counsel,

22  apparently they get a break in front of him, I don't

23  know. But when local counsel conduct themselves in

24  this manner, that's inappropriate. It really demeans

12

1  the tribunal.  They knew where I was.  They knew darn
2  well I was across the street because they were working
3  on this with the other law firm.  They were
4  coordinating themselves but they didn't tell me.
5              So they are working their little game,
6  the lawyer who is on the other side of the hall in
7  front of Judge Wheaton, he had a copy of the order
8  that I didn't see until I got it in the mail.
9  Eventually they sent me a copy of the order and yes, I
10 got it.  It may have even been faxed to me.  Mr.
11 Sanders does frequently fax me things, and I accept
12 them because they are under 10 pages.
13             So, I think that Judge Elsner, for
14 whatever reason and I don't want to be seen as coming
15 in here today and attacking Judge Elsner.  You know,
16 he has ruled in my favor on occasion and he has ruled
17 against me on occasion and I don't take it
18 personally.  But I think he was quite wrong to try and
19 enter a partially dispositive order because there are
20 other parties in here that are in default, Mr. Manjoo
21 is in default, and I don't know what we are going to
22 do with the other two, we will see what happens.
23 There are parties in default, and I didn't get
24 notice.  It would have been a simple matter.  I didn't

13

1  come in initially and say this is outrageous, blah,
2  blah, blah.  I said come on, let's do something about
3  this.  Didn't want to do it.  Didn't think I had a
4  right to have a re-hearing in front of somebody that
5  had not heard an ex parte hearing.

6          With all due respect, your Honor, I
7  think that's legal error and I believe it's also
8  Constitutional error.  I don't want to get involved --
9  I mean, this is a simple matter.  One of the things
10 that I have found in DuPage County is that people
11 treat themselves very courteously and there's a
12 concern for the appearance of justice as well as the
13 minutiae.  Now, if they want to file this kind of
14 junk, I can't stop them.  It's irrelevant to the
15 issue, has nothing do to do with the lawsuit and, you
16 know, that's fine.  They can file, we used to say the
17 Howard Johnson's menu but I don't know if Howard
18 Johnson's is still in business, they want to file an
19 old copy of the Howard Johnson's menu.  I don't care.
20 I am used to being slimed by Mr. Sanders and I answer
21 and I am getting ready to go back and slime him later
22 this afternoon on a case that's still going on.  We
23 will do some more on this but that's not the way it
24 should be.

14

1           At the very least a litigant has the

2   right to notice and has the right to be heard.  What's

3   interesting is that they did mail this out but they

4   didn't fax it.  I didn't have that.  Because had I

5   known, my God, all I would have done is I would have

6   gone to Judge Elsner and said, Judge, I am across the

7   hall on an injunction hearing.  Can I have a little

8   breathing space or because I had maybe short notice, I

9   would have said, gentleman, can we adjourn this, can I

10  come back and can I have some time to file a

11  response.

12          Obviously you couldn't file a response

13  to that in 5 minutes.  They didn't care.  With all due

14  respect, your Honor, that's inadequate adjudication.

15  It's inadequate service as an impartial hearing

16  officer and a judicial officer.  I believe that Judge

17  Elsner shouldn't hear further parts of this because if

18  you go back to him, he has poisoned the well with this

19  and we are going to be fighting over all this stuff

20  and motions to vacate and whatever and whatever.  And

21  it compromises it.

22          I'm sorry I had to file this motion.  I

23  apologize.  I don't like doing that.  I mean, you

24  know, I accept that judges sometimes rule in your

15

1  favor and sometimes they don't.  I have won my share
2  and I have lost my share.  I don't like having to
3  challenge him, but I just think his sense of justice
4  and taking an action and purportedly dismissing part
5  of this case and now putting me in the position where
6  I have to go back and question him again and his
7  behavior and tell him that he was wrong and they were
8  wrong with what they did is inappropriate.  I don't
9  see why the case -- it should have been -- we are kind
10 of in a peculiar situation here.  He says it's not a
11 right.  The only reason he is saying I don't have a
12 right to a new judge is because he violated my rights
13 and I didn't have notice.  Now, that to me is the most
14 ludicrous kind of reasoning.

15          Now, Judge, it says because I violated
16 your rights, you don't have your statutory rights, you
17 know.  I mean, look, I filed my motion.  Is it really.
18 that much of a motion just because they didn't give me
19 notice, more slime.  And I am sure that if we take
20 this to the Supreme Court of Illinois, we will have
21 another mountain of slime over a simple case.  I get
22 libeled all the time.  I am an author and that's what
23 this book is about and that's what they are trying to
24 hurt.  I am an author and people write about me and

16

1 they attack me.  And if it's just that they don't like

2 me or they think that I am, you fill in the blanks

3 with whatever worse words you ever heard in your life,

4 I can't help that.  ·That's protected.  That's

5 Constitutionally protected.  But when somebody makes a

6 statement of fact that's false and tries to undermine

7 my integrity as a writer and says that I have been

8 debunked when I haven't been, then it should be

9 ·resolved.

10         Now, I have resolved little minor --

11 this is a minor glitch.  It should have been resolved

12 with the lawyers but they are arrogant.  You know,

13 instead of saying let's see if we can make this right

14 and keep out of court, no, let's go to court.  You go

15 ahead and sue us and right away they are going to

16 file, I don't know, hundreds of pages over a simple

17 matter where they may not have even caught the error

18 in the first instance because it was an article about

19 me they published and they made a mistake and I said

20 look this is wrong, can we resolve it, they didn't.

21         Now, if they want to make a Supreme

22 Court case out of it, that's fine.  But then Judge

23 Elsner looks pretty bad because he heard a hearing

24 when the lawyers knew I was across the hall and he

17

1  went ahead and conducted himself ex parte.  I don't

2  think that's right.  And I think anyone that would

3  hear that that went on would have a lot more

4. unappetizing language to characterize that kind of

5  behavior that I have used this morning.  The bottom

6  line is if they want to fight, I have no choice but to

7  fight them.  It's not like I have been drawn into --

8  it's not like I attacked them; they attacked me.  Now

9  first they attacked me with lies in a national

10  publication.  Then they make money by selling these

11  lies around the country and then when I come in to

12  court to defend my right to the truth, I get, I don't

13  know, 3 or 4 or 5 pounds of lies and

14  misrepresentations and distortions and now I didn't

15  know this thing existed until yesterday.  You have

16  been prejudiced by it.  You read all this garbage.

17  You have to be wondering what does all this mean and

18  what does this -- it has nothing to do with the issue

19  of whether or not I was defamed by an article that

20  they published six or eight months ago.  It's all a

21  smear campaign.  Let's smear Andy.

22              Now, I would respectfully -- you know

23  what their answer is, we are going to fight him right

24  back and we are going to sue Jenner & Block and we are

18

1  going to sue Mr. McLean for violating my rights and,
2  you know, fixing a judge in DuPage County and having a
3  secret hearing.  It's going to go on all out of a
4  small matter that could have been settled courteously
5  with a correction and an apology and never needed to
6  go to court.  They just the minute they hear it's me,
7  they want to fight.  These guys, they have stunted
8  egos and any time they can get into court with Andy
9  Martin, it makes them think they are big shots because
10  they are litigating with me.  I am the writer, they
11  are not.  They are sitting in their offices there
12  worrying how they are going to pay the rent and
13  whether they are going to dissolve the law firms.
14  It's wrong, your Honor.  It's wrong to indulge this
15  kind of abusive professional behavior.

16              And with all respect, I don't think
17  Judge Elsner looks very good.  You know, the next step
18  if we don't get it resolved here, we are going to the
19  Illinois Supreme Court under a supervisory order, and
20  we are going to have hundreds more pages and they are
21  going to be wondering what's going on.  So sometimes
22  it's nice to have a judge that thinks about being
23  practical, and the practical thing to do is to say
24  look, forget it, it was a mistake, let somebody else

19

1  hear it and be done with it.  That to me, and you
2  know, I am going to have to sit now and listen to all
3  these lies and personal attacks, none of which have
4  anything to do with the merits of the lawsuit.  And I
5  have to say to you as I said, your Honor, this is not
6  a case that should ever have come to court.  They
7  forced it into court, and by golly, I am going to
8  force them to resolve it and force the court system to
9  protect my rights.  But I don't want to be here.  I
10  have more important things to do today.  I have people
11  calling around the world, they want comments.  I don't
12  have the time.  But as a matter of moral principle, I
13  am not going to let the New York Times lie about me,
14  and I am not going to let them sneak into a judge
15  secretly and conduct a secret hearing, and if that
16  isn't cause to ask for a separate judge and to avoid
17  conflict, because surely there will be conflict if
18  this case bounces back to Judge Elsner, we are going
19  to be fighting over this and he is going to be in the
20  middle of it.  It's not fair to him either.  They
21  compromised him.

22          I honestly think that he was abused in
23  this process because as I say, I know Judge Elsner, I
24  know that Mr. McLean knows him, and they took

20

1  advantage of him.  So the bottom line is the
2  practical, simple way to resolve this is assign it to
3  a different judge.  We will go in, we will explain to
4  the judge we didn't get notice.  Most judges would say
5  well, let's set if for hearing.  How much time do you
6  need to file an answer, and then I will file my answer
7  and we will come in and we will fight and he can throw
8  his smears at me and I will throw my smears at him and
9  the judge will roll his eyes or her eyes and that will
10  be the end of it or maybe we will settle it, I don't
11  know.

12         But the bottom line is it should be
13  heard in an adversary posture and not in an ex parte
14  posture.  A judge that doesn't understand that has
15  created cause in my opinion.  With all due respect,
16  and I know that judges hate these recusal motions, and
17  you know, last thing you want to do is substitute out
18  a colleague.  But in this case it's the right thing to
19  do.  I'm sorry.  I apologize.  Thank you, your Honor.
20         THE COURT:  Okay.  Thank you, Counsel.
21         MR. SANDERS:  I will be brief, your Honor.
22         THE COURT:  Sure.  Take as much time as you
23  like.
24         MR. SANDERS:  The only issue before your Honor

21

1  is whether Mr. Martin has satisfied his statutory
2  burden of showing that Judge Elsner is prejudiced
3  against him and biased. The only argument that Mr.
4  Martin made in his motion to show bias is that Judge
5  Elsner supposedly conducted an ex parte proceeding.
6  That's the grounds that's stated in the motion. That
7  is it.

8       Mr. Martin says in his motion that Judge
9  Elsner has a history from prior proceedings, I gather
10  that I am not aware of, treating him with respect and
11  fairly. So the only grounds that he is asserting now
12  is this purported ex parte proceeding. There is no
13  legitimate basis to that argument because there is no
14  dispute on the facts that there was no ex parte
15  proceeding.

16       Facts are few and they are simple, your
17  Honor. We filed our motion to dismiss on May 19. We
18  served it by mail. We served it on May 19. We gave
19  more notice of the hearing than either the local rules
20  or the Illinois Supreme Court rules require precisely
21  to avoid problems with Mr. Martin claiming inadequate
22  notice as he has done before. I also note that Mr.
23  Martin just now this morning in front of you said that
24  he is adamant, adamant that he doesn't want to receive

22

1  anything more than 10 pages by fax because that jams
2  up his machine, and I think he used the words, "puts
3  him out of business."

4        ·So, your Honor, our motion to dismiss,
5  which is attached as Exhibit 1 to our response, you
6  can see the length of it.  It's a motion.  It's got a
7  number of exhibits.  It's probably 50 or 60 pages.  We
8  served him in accordance with the rule by mail, which
9  Mr. Martin now says is what he prefers for documents
10 of any length.  But in any event, we fully complied
11 with the rules by service.

12        Mr. Martin did not appear in court on
13 the noticed hearing date of May 29.  I heard about
14 three or four different reasons for Mr. Martin, but
15 the principal point that he asserts in his motion is
16 that he never got our papers because he was away on an
17 extended vacation and maybe he was and maybe he
18 wasn't.  I am willing to give him the benefit of the
19 doubt and assume for the moment that he might have
20 been away on vacation when we served our papers.  He
21 doesn't claim that he never got them.  He claimed that
22 he was away when they came in, didn't receive them
23 until after the notice date of May 29.  So on the
24 hearing date of May 29, your Honor, we appeared before

23

1   Judge Elsner as we stated in our papers.  Judge
2   Elsner, knowing I gather Mr. Martin from prior cases
3   before him, we called the case at 9:00 o'clock.  Mr.
4   Martin wasn't there.  Judge Elsner said let's give him
5   more time to see if he appears.  We waited until 9:20
6   or 9:22, something like that.  When he didn't appear,
7   the case was called.  We appeared before Judge
8   Elsner.  Judge Elsner said that he had reviewed, this
9   is all in open court, he said that he had reviewed the
10  motion that had been filed.  He had read the cases
11  that had been cited there and he granted the motion.
12  This is all done in open court pursuant to notice that
13  complied with both the Illinois Supreme Court rules
14  and the county or I should say this court's local
15  rules.

16              What it comes down to, your Honor, is
17  that Mr. Martin thinks that because he personally
18  didn't receive the properly noticed filings, that the
19  Court cannot go forward at all in his absence and that
20  if he does go forward, it is ex parte and it is
21  improper and it shows bias towards him.  We have cited
22  the authority in our response.  There is absolutely no
23  law whatsoever in support of that notion.  It is not
24  an ex parte proceeding to proceed in accordance with a

24

1    notice that's been tendered in accordance with the

2    rules.  So what we are left with is that Mr. Martin

3    feels aggrieved by the ruling on the motion to

4    dismiss, which as you know from the exhibit we have

5    attached, is a motion to dismiss to enforce a federal

6    court injunction.  That's what the underlying motion

7    was that Mr. Martin has been referring to.

8            ---   But a ruling on the merits under all

9    authority in Illinois cannot serve as the basis for a

10   motion for substitution of judge for cause.  So, your

11   Honor, that's about all that I have to say.  It's all

12   in our papers.  I have nothing further to add.

13           THE COURT:  Okay.

14           MR. MARTIN:  May I respond, your Honor?

15           THE COURT:  Certainly.

16           MR. MARTIN:  I will start from backwards

17   because I think Mr. Sanders, without realizing it,

18   just undermined your Honor's earlier understanding of

19   this matter.  He just said that Judge Elsner did not

20   rule on the merits.  He said that himself just now.

21   He said he ruled on enforcing a federal court

22   injunction.  He dismissed the case.

23           THE COURT:  That's not what I understood he

24   said.

25

1       MR. MARTIN: Oh, okay. Well, I understood
2   what he said was that there was no ruling on the
3   merits.

4       MR. SANDERS: Just so there is no
5   misunderstanding, because I understand we are on the
6   record here.

7       THE COURT: Certainly.

8       MR. SANDERS: The substance of the motion to
9   dismiss we presented was not in essence a 615, 2-615
10  or 2-619 motion, it was an administrative matter to
11  dismiss the action for Mr. Martin's noncompliance in
12  our view with a federal court injunction. We cited
13  ample authority. The courts around the country have
14  dismissed his actions as a sanction. It was really a
15  motion to dismiss as a sanction. That's what I was
16  referring to.

17      MR. MARTIN: Your Honor, I heard him right the
18  first time. The judge never addressed the merits of
19  the lawsuit. He just admitted again that he filed a
20  motion to dismiss on some collateral matter having
21  nothing to do with the merits of the case. It would
22  seem to me that that was not a ruling on the merits of
23  the case. By his own admission the judge should have
24  granted the SOJ as a matter of right. We shouldn't

26

1   even be here.  But what I find interesting is he says

2   that the judge supposedly conducted an ex parte

3   hearing.  It wasn't supposed.

4            What he leaves out of his litany is ten

5   days is not a lot of notice to get something in

6   Chicago.  I sometimes get stuff that takes three

7   weeks.  Sometimes I get bills that don't even arrive.

8   Ten days is not a lot of notice.  Had he sent me a fax

9   as is his normal practice or has sent me a letter and

10  said we are sending you a voluminous matter, here's

11  the notice of motion, I would have known about it and

12  I would have called him the way I did yesterday.  And

13  near as I can tell, he is perfectly willing to

14  contradict me if he wants, Sanders and I are nasty to

15  each other in court, but we have always been cordial

16  out of court in dealing with administrative matters

17  and the flow of the paperwork.

18            I would have had no problem calling him

19  and saying such and such or I am going to be there.

20  They knew where I was.  That's what's the trick here.

21  That's the skunk in the wood pile.  Forget the notice

22  that was mailed.  I didn't get it and I would have

23  been in court had I received it.  Common sense tells

24  you that.  I was across the hall.  They knew where I

1   was.  They tricked the judge because they knew I was
2   across the hall.  You notice he didn't deny that
3   because he was here with the other law firm that was
4   handling the injunction hearing.  They gave him, the
5   other lawyer, a copy of this bogus order and I have a
6   transcript that proves that because he comes into
7   court and he waives the copy of their order in front
8   of judge Wheaton.  I have an order, your Honor, it was
9   judge entered in Judge Elsner's court.  That was when
10  I found out about the proceeding.  I said to Judge
11  Wheaton, I don't know anything about this, what
12  hearing, what across the hall.

13               It begs common sense that a lawyer is on
14  one side of the hall and he knows he has a hearing on
15  the other side of the hall and he wouldn't cross the
16  hall and say to Judge Elsner, your Honor, I got a
17  conflict, can you help me.  I know what Judge Elsner
18  would have said.  He would have said, oh, all right.

19               But then he goes and puts words in the
20  judge's mind.  He says that the judge said he read the
21  cases.  There is no evidence that the judge read the
22  cases.  I have the transcript.  And I just went
23  upstairs to the third floor to order it.  Do you have
24  a copy of the transcript?

28

1    MR. SANDERS: I certainly do.

2         THE COURT: Then why don't you give it to the

3    judge and see what it says.

4         ·MR. SANDERS: I will give you the order.

5         MR. MARTIN: They drafted the order, that's

6    not what the judge -- let's see what the judge says

7    in court. It was a 3 or 4 page situation. If he did

8    that, again we are not fighting over the merits of the

9    case. We are sitting here bashing each other with

10   voluminous attacks and irrelevant material, none of

11   which -- now he said we didn't ask the Court.

12        MR. SANDERS: Excuse me. "My credibility has

13   been attacked. The motion to dismiss was filed and

14   you were good enough to give me a courtesy copy well

15   in advance of today that I have read the motion, I

16   have read the cases cited in the motion."

17        MR. MARTIN: I stand corrected. I read it

18   recently and I didn't remember that.

19        MR. SANDERS: Uh, hum.

20        MR. MARTIN: I apologize to you, Mr. Sanders.

21   I don't often apologize for making a mistake.

22        THE COURT: Do you have any new information

23   that you would like to give to me?

24        MR. MARTIN: Yes, I just think it's arrogance,

29

1  your Honor, at the end of the day it's arrogance to be
2  conducting a hearing on one side of a courthouse.
3  This is going to go up to the Supreme Court I am
4  afraid, one side of the hall and the lawyers know that
5  the opponent is on the other side of the hall and they
6  bamboozle the judge, and the judge for whatever reason
7  isn't willing to review and undo his behavior.

8          I think that it makes this judicial
9  system look bad.  It's cases like this that make
10 judges and courts look silly.  Courtesy would have
11 eliminated the problem.  We didn't need to be in court
12 with a lawsuit to begin with and we shouldn't even be
13 here today.  They knew where I was.  They gave a copy
14 of their order to the opposing counsel in that case,
15 there were two cases, they weren't related cases but
16 local lawyers know each other.  It's wrong and it
17 smells and it shouldn't have happened, and I had a
18 right to present my defenses to a judge that did not
19 conduct an ex parte hearing.

20         THE COURT:  Okay.  I have reviewed the written
21 pleadings that were sent to me and certainly
22 considered the oral arguments made today.  My limited
23 role here is to determine whether the plaintiff, Mr.
24 Martin, has met his burden to show me by specific

30

1   evidence that Judge Elsner has demonstrated bias or
2   prejudice against him.  The only issue that I am asked
3   to determine is whether he has done so by conducting
4   an ex parte hearing in this case.  I find, Mr. Martin,
5   that you have failed to meet your burden.  I find that
6   no ex parte hearing occurred, and I deny the motion
7   for substitution of from Judge Elsner for cause and
8   order that the parties return to Judge Elsner's
9   courtroom to have this case appropriately set, if
10  there are any further issues that need to be dealt
11  with.
12          MR. SANDERS:  Thank you, your Honor.
13          MR. MARTIN:  Will you be entering an order or
14  is your order going to be on the record?
15          THE COURT:  You can prepare a written order
16  that I will be happy to sign reflecting the oral
17  ruling.
18          MR. MARTIN:  I would only ask that they do not
19  submit an order to the court that I haven't previously
20  seen.
21          MR. SANDERS:  I will do it right this minute,
22  your Honor.
23          MR. MARTIN:  Thank you, your Honor.
24          MR. SANDERS:  Your Honor, was it your

1    preference that we not have your Honor included in
2    this order as a matter of administrative functioning?
3            THE COURT:   That should be handled by the
4    judge assigned to the case.
5            MR. SANDERS:   Thank you, Judge.
6                    (Which were all the proceedings had
7                    in the above-entitled cause.)
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

32

1  STATE OF ILLINOIS )

2                    ) SS:

3  COUNTY OF DUPAGE  )

4

5

6              I, ROSEMARY STEPHENS, hereby certify

7  I am a Certified Shorthand Official Court Reporter

8  assigned to transcribe the computer based digital

9  recording of proceedings had of the above-entitled

10  cause, Administrative Order, 99-12, and Local Rule

11  1.01(d).  I further certify that the foregoing,

12  consisting of Pages 1 to 33, inclusive, is a true and

13  accurate transcript hereinabove set forth.

14

15

16

17

18                   Official Court Reporter

19          Eighteenth Judicial Circuit of Illinois

20                      DuPage County

21                 Certificate #084-002515

22

23

24

33