E-FILED
Friday, 18 December, 2009 03:33:07 PM
Clerk, U.S. District Court, ILCD

**D**

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1991 WL 125954 (N.D.Ill.)
(Cite as: Not Reported in F.Supp., 1991 WL 125954 (N.D.Ill.))

Page 1

Martin-Trigona v. Chicago Tribune
N.D.Ill.,1991.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
Anthony R. MARTIN-TRIGONA, Plaintiff,
v.
CHICAGO TRIBUNE, Defendant.
No. 87 C 6605.

June 28, 1991.

*MEMORANDUM OPINION AND ORDER*

MAROVICH, District Judge.
*1 Plaintiff Anthony Martin-Trigona filed this four-count libel suit against defendant Chicago Tribune Company. Although plaintiff attempted to state four separate causes of action against defendant, it is obvious that his purported basis for this lawsuit is defendant's alleged defamation of plaintiff. On September 19, 1988, this court dismissed counts three and four which purported to state causes of action for misrepresentation and negligence. Before the court is defendant's motion for summary judgment on the two remaining counts which sound in defamation. For the following reasons, defendant's motion is granted.

*BACKGROUND*

Summary judgment is appropriate if "the pleadings, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact ..." Fed.R.Civ. P. 56(c). In ruling on a motion for summary judgment, a court must view the record and all inferences to be drawn from it in the light most favorable to the non-movant. *Beard v. Whitley County REMC,* 840 F.2d 405, 409-410 (7th Cir.1988). Where a party bears the burden of proof on an issue, however, he must "affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Id.* at 410 (emphasis in original).

This court's Local Rule 12(m) requires that a summary judgment movant must

file ... a statement of material facts as to which [it] contends there is no genuine issue ... including ... specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph.

Local Rule 12(n) provides as follows:

Each party opposing a Rule 56 motion shall ... file, together with opposing affidavits (if any) and other materials referred to in Rule 56(e)... a concise response to the movant's [Rule 12(m) ] statement ... *including in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and ... a statement ... of any additional facts which require the denial of summary judgment, including reference to the affidavits, parts of the record, and other supporting materials relied upon. All material facts set forth in the statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing party.*

Defendant has complied with Local Rule 12(m). Plaintiff has not even attempted to comply with Local Rule 12(n). Thus, all of the facts set forth by defendant in its Rule 12(m) statement are deemed admitted by plaintiff for purposes of defendant's summary judgment motion. Those facts are summarized as follows.

Plaintiff, a law school graduate who is not a member of the bar [FN1], is a litigious individual who likes publicity. He has filed hundreds of *pro se* lawsuits against various individuals, corporations, government entities, courts, judges, tax examiners, etc. One court has concisely summarized plaintiff's penchant for litigation as follows:

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1991 WL 125954 (N.D.Ill.)
(Cite as: Not Reported in F.Supp., 1991 WL 125954 (N.D.Ill.))

Page 2

*2 [Martin-Trigona] is the source of literally hundreds of lawsuits, motions and miscellaneous pleadings, all but a small fraction of which lack any merit whatsoever. Viewing Martin-Trigona's litigious conduct in its entirety yields the inescapable conclusion that he persistently resorts to legal processes without regard to the merits of the claims asserted and that he invokes those processes largely to harass persons who have unluckily crossed his path. His abuse of legal processes is exemplified not only by the number and variety of meritless actions but also by his recent use of pleadings and other legal papers ... as a vehicle to launch vicious attacks upon persons of Jewish heritage.

*In Re Martin-Trigona,* 737 F.2d 1254, 1256 (2nd Cir.1984).

In addition to filing frivolous lawsuits, plaintiff occupies his time running for various public offices. Plaintiff has run for Champaign County Clerk, Mayor of Chicago, Illinois State Representative, United States Senator from Illinois, Secretary of State of Florida, and President of the United States.

When he isn't filing frivolous lawsuits and/or running for public office, Martin-Trigona amuses himself by taking ridiculous public actions and making outrageous public statements to the press. For example: (1) in 1976, plaintiff filed complaints with the Federal Election Commission against, *inter alia,* former Presidents Ronald Reagan, Jimmy Carter, and Gerald Ford; (2) on May 27, 1987, plaintiff issued a press release calling on the Federal Bureau of Investigation and the Secret Service "to release their Jesse Jackson 'sex' files"; (3) in 1987, plaintiff issued a press release announcing a "CBS shareholder offensive" against CBS Chairman Laurence Tisch whom plaintiff referred to as the "Butcher of Black Rock" and a "propagandist"; and (4) during his 1987-1988 campaign for President of the United States, plaintiff repeatedly referred to himself as a former "political prisoner."

In 1980, a federal court jury found plaintiff guilty of mail fraud. The judge sentenced plaintiff to twelve years in prison. Plaintiff served one year of that sentence before the Seventh Circuit reversed his conviction in 1982 because, *inter alia,* he had been denied effective assistance of counsel at trial. *United States v. Martin-Trigona,* 684 F.2d 485 (7th Cir.1982). Also in 1980, plaintiff was convicted in state court of theft and forgery after a bench trial. The judge originally sentenced plaintiff to three years in prison for that conviction but subsequently vacated that conviction on the grounds that the government used plaintiff's federal court mail fraud conviction-which was reversed after his state court trial-to impeach his testimony at trial. *People v. Martin-Trigona,* 111 Ill.2d 295, 297-298, 489 N.E.2d 1356 (1986).

On April 17, 1987, defendant published a picture of plaintiff with the following caption: "Running again: Anthony Martin-Trigona campaigns for the Democratic Presidential nomination Thursday in Concord, N.H. He is best remembered in Chicago for his long-shot runs for mayor and senator. He was convicted of forgery and theft here in 1980" ("Caption").

*3 On May 8, 1987, defendant published the following "Correction and Clarification": "A photo caption in some editions of the April 17 Tribune said politician Anthony Martin-Trigona had been convicted of a crime, but neglected to say an appeals court had reversed the conviction. The Tribune apologizes for the omission."

## ANALYSIS

The first amendment restricts recovery for injury to the reputation of a "public figure" only if he has "clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 342 (1974). This mental state is referred to as "actual malice." There can be little doubt that a person like plaintiff who runs for various elected offices, makes preposterous statements to the press, and routinely and re-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1991 WL 125954 (N.D.Ill.)
(Cite as: Not Reported in F.Supp., 1991 WL 125954 (N.D.Ill.))

Page 3

peatedly files baseless, frivolous lawsuits against anyone who crosses his path qualifies as a "public figure". Plaintiff himself conceded in his deposition that he is indeed a "public figure" for purposes of the instant lawsuit.

Defendant makes three arguments in support of its motion for summary judgment: (1) that plaintiff has no evidence of actual malice on the part of defendant; (2) that plaintiff is "libel proof" because his reputation is so poor as a result of his own actions that, even assuming *arguendo* that defendant's Caption was otherwise an actionable defamation, plaintiff's already-poor reputation was not damaged as a result thereof, and (3) that the caption was "substantially true." The court need not address defendant's second or third argument because defendant's first argument is dispositive.

Plaintiff's only evidence that defendant or its copy editor who was responsible for all photo captions, acted with actual malice is the fact that defendant had information in its own files which, had defendant's copy editor searched such files, would have revealed that both of plaintiff's 1980 criminal convictions had in fact been reversed. The Supreme Court has expressly held that such failure-to-search-files evidence is not sufficient to establish actual malice or reckless disregard for the truth. *New York Times v. Sullivan,* 376 U.S. 254, 287 (1964). Plaintiff has *no* evidence of actual malice on the part of defendant, much less clear and convincing evidence of same. Since actual malice is an element of plaintiff's *prima facie* case, his claim must fail.

*CONCLUSION*

Plaintiff has no evidence of actual malice on defendant's part. Accordingly, defendant's motion for summary judgment is granted.

> FN1. Plaintiff passed the Illinois bar examination in March of 1970. The Committee on Character and Fitness asked plaintiff to submit to a psychiatric evaluation after discovering that plaintiff's Selective Service file indicated that plaintiff had been found unfit for military service because of a "moderately-severe character defect manifested by well-documented ideation with a paranoid flavor and a grandiose character." *In Re Martin-Trigona,* 55 Ill.2d 301, 305, 302 N.E.2d 68 (1973). Plaintiff refused this request and the Committee was therefore unable to determine if plaintiff had good moral character and was fit to practice law. Plaintiff then applied to the Illinois Supreme Court for admission to the bar. Without relying on plaintiff's refusal to undergo a psychiatric examination, the Illinoise Supreme Court denied his application because of plaintiff's conduct in sending numerous vituperative, profane letters to members of the Committee of Character and Fitness and filing similar pleadings in various courts.

N.D.Ill.,1991.
Martin-Trigona v. Chicago Tribune
Not Reported in F.Supp., 1991 WL 125954 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.