E-FILED
Friday, 18 December, 2009  03:33:07 PM
Clerk, U.S. District Court, ILCD

E

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| ANTHONY R. MARTIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| .v. | ) No.: 01 L 15132 |
| | ) |
| LASALLE BANK, N.A., MATTLIN & | ) |
| McCLOSKEY, SCHWARTZ, COOPER, | ) |
| GREENBERGER & KRAUSS, BONDED | ) |
| COLLECTION CORPORATION, | ) |
| HARRISON TEMPEST, CHAIRMAN, | ) |
| | ) |
| Defendant. | ) |

## ORDER

This cause, coming before the Court on its own Motion to Require Anthony R. Martin f/k/a Anthony R. Martin-Trigona to Petition the Chief Judge of the Circuit Court of Cook County and obtain approval prior to filing, or causing to be filed, any future claim, pleading, complaint or other paper in the Circuit Court of Cook County, hereby holds as follows:

### Findings of Fact:

On September 4, 1996, Anthony Martin and LaSalle Bank executed a settlement agreement in the amount of $65,000.00. The agreement released two claims that Martin had pending against LaSalle, and clearly stated that Martin "will not at any time, directly or indirectly, make any claim or assert any cause of action against any protected party for any matter which has been released pursuant to this Agreement". Thereafter, Martin received a notice of debt from Bonded Collection Corporation indicating that he owed LaSalle $1,913.17. According to an affidavit submitted by one of LaSalle's attorneys,

1

this amount represented trustee's fees. Martin believed this debt collection to be a breach of the settlement agreement and proceeded to file suit on August 31, 2001, against LaSalle Bank, ABN AMRO Bank and Bonded Collection in Dade County, Florida. The lawsuit alleged breach of contract and violations of the Fair Debt Collection Practices Act. It asked for money damages and injunctive relief. With the Florida action pending, Martin subsequently filed suit on November 26, 2001, in Cook County, Illinois. The Cook County complaint alleged breach of contract and civil racketeering against LaSalle; Mattlin & McCloskey; Schwartz, Cooper, Greenberger & Krauss; Bonded Collection Corporation; and Harrison Tempest, Chairman. It prayed for injunctive relief and damages in the amount of $1,000,000.00. The case was assigned to Circuit Court Judge Paddy McNamara. In light of the pending Florida action, Judge McNamara dismissed LaSalle from the Cook County action on October 17, 2002. It was this ruling, as well as Judge McNamara's refusal to allow litigation by telephone that caused Anthony R. Martin to begin attacking the character and conduct of Judge McNamara by making the following statements:

- Dragging someone from New York to Chicago and back may be your idea of a joke. We'll soon see what a judge thinks of it. It was very juvenile, or even bitchy of you to act in such a manner. I do not take petty harassment lightly. Letter to Judge Paddy McNamara 2/8/03.

- I hereby demand reimbursement of $750. I would like to give you ten (10) days to reimburse me for my out-of-pocket costs as a result of your bitchiness. If you do not pay me, I am going to sue you for my travel costs and transcript cost. ... I will also take any other additional appropriate action to make you respect your office and respect litigants who have been victimized by your bias. Letter to Judge Paddy McNamara 2/8/03.

2

- Lacking a defense to plaintiff's lawsuit, defendants have sought refuge in a biased judge who is making a joke of the law, and who has sought to deprive plaintiff of a neutral and detached judicial tribunal. Indeed, this case represents Cook County justice at its finest: a biased or possibly corrupt judge acting on behalf of a corrupt law firm to pervert justice and to defeat a valid claim. Plaintiff's Response to Defendant's Response to Plaintiff Motion for Summary Judgment ¶ 1(D).

- Plaintiff filed a motion to vacate what was an obviously corrupt or incompetent order purporting to dismiss a party.... In short, the judge is making a joke of the judicial process. Id. ¶2(B).

- This court's ruling – in light of the First District's precedents cited by plaintiff – was an embarrassment. The motives for this court's self embarrassment is not clear. Id. ¶ C(b)(2).

- The claim that plaintiff is not prosecuting this case diligently and expeditiously is a fraud on the court as an institution, committed by the judge (McNamara, J.) with the connivance and acquiescence of opposing counsel (who could face disciplinary conduct for his conduct). Mot. to Vacate Order of Dismissal For Want of Prosecution ¶1.

- In light of Supreme Court Rule 185, and the general movement to facilitate and simply [sic] phone participation, particularly for a litigant who lives over a thousand miles from the court, this court's refusal to enforce Rule 185 constitutes judicial misconduct and is fraudulent conduct when a false order is entered falsely suggesting a party is not prosecuting a case when the opposite is true. Id. ¶2(d).

- When a judge is faced with the choice of either an <u>ex parte</u> hearing or a hearing with all parties present, and chooses to proceed in secret, <u>ex parte</u>, then the court is making a corrupt and unlawful choice. Id. ¶3(a).

- The court's claims were a gross misstatement of the law and a serious perversion of due process. The judge's ruling is an embarrassment to every judge of this court because it suggests retaliation against a crusader for judicial integrity, to the point of making irrational, absurd and fraudulent rulings. Verified Motion to Vacate Order of Dismissal of LaSalle Bank ¶1.

3

- Obviously, bias towards the plaintiff played a role in corrupting the administration of justice. Id. ¶2(c).

- But Judge McNamara turned the law on its head. Id. ¶2(e).

- Without any prompting or provocation from even defendants' counsel, the court sua sponte referred to plaintiff as a "notorious litigant." The tone of the court's voice indicated a distinct dislike for the source of that alleged notoriety, apparently plaintiff's having been the originator of what morphed into Operation Greylord and resulted in the prosecution and conviction of some eighty (80) judges and court personnel. Verified Renewed Motion to Recuse Circuit Judge for Cause Based on New Developments Since Last Motion ¶1.

- It was evident form [sic] the court's unsolicited comments that the court has feelings towards the plaintiff that arise outside any action of the plaintiff in this case. Id.

- Generally court rulings, even erroneous ones, are not a basis to remove a judge. But, when deliberate distortions of the law are made by a judge, and these hostile actions are coupled with what appears to be extrajudicial knowledge of a party, and a frame of mind based on extrajudicial activities of a party, then recusal is mandated. (citations omitted.) Id. ¶2.

- A judge who deliberately misstates the law is engaging in misconduct. Id.

- Of necessity I have had to be strongly critical of your prior actions, which I believe were either corrupt or incompetent or both, and reflect the kind of behavior that led to Operation Greylord. Letter to Judge Paddy McNamara 12/4/02.

The case pending before Judge McNamara was then transferred for further proceedings to Judge William D. Maddux on December 12, 2002. Judge Maddux entered an Order on June 6, 2003, which disposed of the matter in its entirety. The first issue addressed in the Order was Martin's motion to vacate the order dismissing LaSalle. Judge Maddux denied this motion holding that "the action against LaSalle was properly dismissed under 735 ILCS 5/2-619(a)(3)" because an identical claim in Dade County was

4

pending against LaSalle. (Order 6/6/03.) Bonded Collection was granted its motion to dismiss under 2-619(a)(3), for the same reasons as LaSalle, and it was also granted summary judgment because it was not a party to the settlement agreement and therefore could not have breached it. Schwartz Cooper, Greenberger & Krauss was granted its motion for summary judgment because the court held that it was named as a "protected party" and a "releasee" under the settlement agreement, and did not violate the agreement in any way to constitute a breach of agreement. Mattlin & McCloskey n/k/a McCloskey, D'Anna, Ioannou & Dieterle, LLP, ("McCloskey") was also dismissed pursuant to 5/2-619 because it is a law firm located in Florida which was hired by LaSalle to defend it in the Dade County Litigation. The court held that McCloskey did not have such minimum contacts with Illinois that "fair warning" of defending itself here, nor did the actions alleged against it relate to its contact with the forum. Lastly, Harrison Tempest, Chairman and CEO of LaSalle's parent ABN AMRO, was also dismissed pursuant to 2-619(a)(3) because he was a "protected party" under the terms of the settlement agreement and did nothing that would constitute a breach of the agreement.

Upon ruling on the motions, the matter was dismissed in its entirety and Judge Maddux set a hearing for a Rule to Show Cause as to why Anthony R. Martin should not be held in contempt. Said hearing was to be heard on June 30, 2003, however, Mr. Martin stated that he would be "out of the office on assignment until next month." (Letter to Judge William Maddux 6/19/03.) As such, the hearing was entered and continued to July 30, 2003. Mr. Martin was given until July 16, 2003, to respond in writing to the Rule to Show Cause, however, he failed to respond, or appear at the hearing.

On August 1, a letter addressed to Chief Judge Evans was delivered to Judge Maddux's chambers. Also enclosed with the letter was a "Response to Order of June 30, 2003 and Prior "Contempt" Order" as well as a Motion to Substitute/Recuse Judge. The Response stated that "[P]laintiff waives his right to appear before Maddux since appearing on a void order would be a waste of time." Additionally, the response included the following remarks:

- It appears that Judge Maddux has forgotten the lessons of Operation Greylord, and indeed seeks to perpetuate similar types of arrogance, corruption and corruption of public office.

- If McNamara and Maddux continue their harassing and abusive behavior, plaintiff plans to sue both of them for civil rights violations.

Martin contends that "the U.S Supreme Court in Holt v. Virginia, 3814 U.S. 131, 85 S. Ct. 1375 (1965) set a high barrier for judicial attacks on advocacy." (Response to Order of June 30, 2003 and Prior "Contempt" Order, 3.) In support of this contention he cites to the case In Re Little, 404 U.S. 553, 92 S.Ct. 659 (1972); for the proposition that a ruling of contempt must arise out of a situation in which "the petitioner's statements were uttered in a boisterous tone or in a wise actually disrupted the court proceeding. Therefore, the vehemence of the language used is not alone the measure of the power to punish for contempt. ... The danger must not be remote or even probable; it must immediately imperil." Id. at 555, 92 S. Ct. at 660.

Martin's reliance on these cases is misplaced. First, in In Re Little, the defendant brought a motion to continue the trial date based on the fact that his attorney was engaged in another matter. Id. at 554, 92 S. Ct. at 559-660. The judge denied the motion, and the defendant was required to represent himself on a charge of carrying a concealed weapon.

6

See id. at 554, 92 S. Ct. at 660. During closing arguments, the defendant remarked that the presiding judge was "biased and had prejudged the case and that petitioner was a political prisoner." Id. 92 S. Ct. at 660. The judge held him in contempt. See id. 92 S. Ct. at 660. The Supreme Court of the United States reversed, reasoning that "[T]he court's denial of the continuance forced petitioner to argue his own cause. He was therefore clearly entitled to as much latitude in conducting his defense as we have held is enjoyed by counsel vigorously espousing a client's cause." Id. at 555, 92 S. Ct. at 660.

Similarly, in Holt, et al. v. Virginia, 381 U.S. 131, 85 S. Ct. 1375 (1965), presiding Judge Holladay issued a rule to show cause why petitioner Dawley should not be held in contempt for failing to answer a question posed in a libel action in which Dawley was representing the defendants. Id. at 132, 85 S. Ct. at 1376. After Judge Holladay denied a motion to disqualify himself from the contempt proceeding, Dawley had peititioner Holt appear as his counsel and argue a motion for a change of venue. See id. 132, 85 S. Ct. at 1376. The motion for change of venue alleged not only "local prejudice" in the current venue, but also that Judge Holladay was intimidating and harassing counsel, "the effect of which is to seriously hamper the efforts of said Leonard W. Holt in defending the said E.A. Dawley, Jr...". Id. at 133, 85 S. Ct. at 1376. Judge Holladay then denied the motion, and held that the argument was contemptuous and both Dawley and Holt were in contempt of court. Id. at 134, 85 S. Ct. at 1377. Although the Virginia Supreme Court upheld the contempt ruling, the Supreme Court of the United States reversed, holding, "the words used in the motions were plain English, in no way offensive in themselves, and wholly appropriate to charge bias in the community and bias of the presiding judge." Id. at 136, 85 S. Ct. at 1378. In conclusion, the court stated

7

"that these petitioners have been punished by Virginia for doing nothing more than exercising the constitutional right of an accused and his counsel in contempt cases such as this to defend against the charges mad." Id. at 138, 85 S. Ct. at 1378.

In this case, Mr. Martin's contemptuous conduct did not arise out of a vigorous defense of the proceedings, as was the case in In Re Little and Holt, but rather, it arose out of an interruption and disrespect of the court proceedings. In In Re Little, the defendant was forced to defend himself on a concealed weapons charge. See id. 404 U.S. 553, 554, 92 S.Ct. 659, 660 (1972). In this case, Mr. Martin filed a frivolous lawsuit and Judge McNamara refused to allow him to litigate over the telephone. Once this ruling was made, Mr. Martin became belligerent and made comments which were inappropriate and designed to harass and intimidate the judge. His accusations of bias and corruption were not based on anything more than an unfavorable ruling, and were in no way related to the proceedings. Mr. Martin is quite familiar with court procedure as he is a litigious person, and the courts have become quite familiar with Mr. Martin's behavior as well. *See generally* In Re: Anthony R. Martin-Trigona; Anthony R. Martin-Trigona v. Harold Lavien, et al.; Anthony R. Martin-Trigona v. William F. Smith, et al., 763 F.2d 140 (1985) (enjoining Mr. Martin from initiating litigation in the federal courts without first meeting certain criteria due to his extensive and harassing litigation).

## Conclusions of Law:

Sanctions for direct criminal contempt are imposed to punish misconduct which interferes with the principal that "(1) judges and other court officials are entitled to respect when performing their judicial duties; (2) judicial proceedings should be conducted in an orderly manner; (3) court orders should be obeyed; and (4) individuals

8

should not commit fraud upon the courts." In Re Marriage of Julie A. Betts and John A. Betts, 200 Ill. App. 3d 26, 45, 558 N.E.2d 404, 416 (1990); See United States v. Mine Workers of America, 330 U.S. 258, 302-303, 91 L.Ed. 884, 917-918, 67 S. Ct. 677, 700-701 (1947). Contempt is considered direct in nature when it occurs in the presence of the judge, or within his knowledge. In Re Marriage of Julie A. Betts and John A. Betts, 200 Ill. App. 3d 26, 45, 558 N.E.2d 404, 416 (1990). The courts have held that the filing of contemptuous papers in court is considered direct criminal contempt. See id. at 48, 558 N.E.2d at 418; (citing People ex rel. Kunce v. Hogan, 67 Ill. 2d 55, 60-62, 364 N.E.2d 50, 51-513 (1977).

Although Anthony Martin responds that his remarks are not contemptuous because they were not in a "boisterous tone," and that his words alone should not be the basis of the contempt, we hold that they do. Anthony R. Martin is guilty of direct criminal contempt. By threatening to sue Judge McNamara who was presiding over his case, by calling her a "bitch," and accusing her as well as Judge Maddux of being corrupt and biased all interfered with the administration of justice. Mr. Martin displayed a total disrespect for the court system as well as the judiciary.

This type of behavior is typical of Mr. Martin. In fact, he was denied admission to the Illinois bar because "he lacks the qualities of responsibility, candor, fairness, self-restraint, objectivity, and respect for the judicial system which are necessary adjuncts to the orderly administration of justice." In Re Martin-Trigona, 55 Ill.2d 301, 312, 302 N.E.2d 68, 74 (1973), *cert. denied*, 417 U.S. 909, 94 S. Ct. 2605, 41 L.Ed. 2d 212 (1974). Additionally, the Second Circuit enjoined Mr. Martin from filing "any new lawsuit, action, proceeding, or matter in any federal court, agency, tribunal, committee, or other

9

federal forum of the United States." In Re: Anthony R. Martin-Trigona; Anthony R. Martin-Trigona v. Harold Lavien, et al.; Anthony R. Martin-Trigona v. William F. Smith, et al., 763 F.2d 140, 142 (1985), *aff'g* 592 F. Supp. 1566, 1571 (1984). Judge Cabranes of the Second Circuit, who presided over the case in which the injunction was entered, reasoned that, "[T]he pattern of Martin-Trigona's approach to litigation seems to involve admiration or respect, at least initially, for the judge to whom his cases are assigned. However, at the first sign of an adverse ruling by the judge who originally was the subject of Martin-Trigona's praise (if not neutrality), Martin-Trigona reverses course and files suit against the judge, the judge's family, his attorneys and anyone else within range." In Re: Anthony R. Martin-Trigona; Anthony R. Martin-Trigona v. Harold Lavien, et al.; Anthony R. Martin-Trigona v. William F. Smith, et al., 573 F. Supp. 1237, 1240 (1983). Similarly, once Judge McNamara ruled that Mr. Martin could not conduct his litigation via the telephone, he became insulting and threatened suit.

Like the Supreme Court of Florida, which recently imposed an "attorney only" sanction on Mr. Martin, we hold that Mr. Martin be barred from filing, or causing to be filed, any future claim, pleading, complaint or other paper in the Circuit Court of Cook County without first obtaining permission from the Chief Judge of the Circuit Court of Cook County. Anthony R. Martin v. State of Florida, 833, So.2d 756, 760 (2002).

WHEREFORE, IT IS HEREBY ORDERED THAT:

Respondent, Anthony R. Martin, is held to be in direct criminal contempt of court. As a sanction of the contempt, respondent, Anthony R. Martin, is barred from filing, or causing to be filed, any future claim, pleading, complaint or other paper in the Circuit Court of Cook County without first obtaining permission from the Chief Judge of the Circuit Court of Cook County.

ENTERED:

Judge William D. Maddux

Judge William Maddux
AUG 1 2 2003
Circuit Court - 1559

11